Jeannette I. French, Plaintiff-Appellee, v. Paul W. French, Defendant-Appellant.

Gen. No. 48,687.

First District, First Division.

September 9, 1963.

William Marosco, of Chicago, for appellant.

Leslie J. Smith, of Forest Park, for appellee.

MR. PRESIDING JUSTICE ENGLISH delivered the opinion of the court.

Defendant filed a petition under Section 72 of the Civil Practice Act to vacate a divorce decree. Plaintiff's motion to strike the petition was allowed. Subsequently, another similar petition was filed by defendant. This petition was dismissed for want of equity and defendant has appealed from both orders.

On January 4, 1960, plaintiff filed suit for separate maintenance, charging her husband with three acts of cruelty, and alleging that he had gone to Nevada with the intention of procuring a divorce there and then returning to Illinois, thus circumventing the laws of Illinois. Plaintiff sought support for herself and the minor child of the parties who was in her custody. She also sought an injunction to restrain defendant from proceeding with a divorce action in any foreign jurisdiction.

On January 27, 1960, an amended complaint was filed whereby plaintiff requested a decree of divorce, alimony, child custody and support as prayed in the

original complaint, and conveyance to her of the parties' home and summer home. She also reaffirmed her request for an injunction, and such a writ was issued on January 27, 1960. The parties became reconciled, however, and on February 23, 1960, the injunction was dissolved. On July 5, 1960, attorneys appeared and answered on behalf of defendant denying most of the allegations of the divorce complaint, except that defendant had gone to Nevada.* The answer stated that the parties were living together again, and asked that the complaint be dismissed, but no such order was ever entered.

Thereafter, on December 22, 1960, after proper notice and by leave of court, plaintiff filed a supplement to her amended complaint for divorce realleging most of what had appeared in the previous pleadings and adding that, after reconciliation, defendant had again been guilty of an act of physical violence against plaintiff and had again gone to Nevada to establish a "pseudo-residence" for the purpose of obtaining a divorce. It was further alleged that the summer home in Wisconsin had been purchased with plaintiff's funds and that she had been tricked by defendant into signing a deed therefor in blank which her husband had used to invest himself with the title after mesne conveyance to his adult son, Paul W. French, Jr.

The order of December 22 also directed defendant to plead to the supplemental complaint within 30 days, and again enjoined defendant from instituting a divorce action in any foreign jurisdiction. In the same order plaintiff's motion for temporary alimony, child support and attorney's fees was set for hearing on January 12, 1961. Defendant's motion to dissolve the injunction was also noted in the order and set for hearing on the same date.

* Defendant had been served with summons on February 5, 1960.

On January 9, 1961, defendant's attorneys notified their client that on January 12, when all of these matters were to come up for hearing, they would move to withdraw as his attorneys. Their notice was sent to defendant by air certified mail "c/o General Delivery, Las Vegas, Nevada." On January 12, their motion to withdraw as defendant's attorneys was allowed, the court's order stating "and it appearing to the court that due and timely notice has been given to all parties concerned, and that the notice to the defendant, Paul W. French, was sent by air mail certified to the last known mailing address of the said Paul W. French, namely, c/o General Delivery, Las Vegas, Nevada and the court being fully advised in the premises"; . . .

Also on January 12, 1961, the court denied defendant's motion to dissolve the injunction of December 22, 1960 and amended that injunction order by adding a provision restraining defendant and others from transferring title to the Wisconsin property. This writ of injunction was sent to defendant by certified mail "c/o General Delivery, Las Vegas, Nevada."

About two weeks thereafter, on January 25, 1961, again on motion of plaintiff, and after notice, an order was entered defaulting defendant for having failed to plead to the supplemental complaint within the 30 days prescribed by the order of December 22, 1960. The supplemental complaint was taken as confessed against defendant, and the cause was set for hearing on January 30. In entering this order, the court found that "proper and timely notice" had been duly served upon the defendant. The notice referred to had been sent air mail by plaintiff to defendant "c/o General Delivery, Las Vegas, Nevada" stating that on January 25 plaintiff would move to have defendant adjudged in default and the cause set down for hearing.

At the hearing on January 30, 1961, plaintiff's evidence was presented, and on February 1, 1961 a decree of divorce was entered on the terms which she had re-

quested. Attorney's fees were allowed to plaintiff's attorney who, on February 18, sent air mail notice to defendant at the same Nevada address that on February 23 he would move to reduce his fee award to judgment, and on that date an order was entered accordingly with execution being directed to issue therefor.

Defendant filed his first petition under Section 72 on July 11, 1961 alleging that he did not receive notice of his attorneys' withdrawal until January 20, 1961; * that he did not get proper notice of the injunction orders or of the filing of plaintiff's supplemental complaint, or of the order requiring him to plead thereto; that he had no notice that he was in default or that a motion to default him had been made; and that he had no notice that the cause had been set for hearing, or that a decree had been entered. As recited above in this opinion, it is apparent from the record that notice had been sent to defendant at each of these stages in the litigation, but defendant's primary objection is that the notices were insufficient because the address to which they were sent was improper.

■ Since the issues relating to defendant's first petition to vacate arose on plaintiff's motion to dismiss, it may be conceded that all well pleaded facts in the petition must be taken as true. Pierce v. Carpenter, 20 Ill2d 526, 531, 169 NE2d 747. Conclusions of law, however, are not admitted by such a motion to dismiss, and the sufficiency of notice is a legal as well as a factual question. It is governed by rules of the Supreme and Circuit Courts. Pertinent parts of these rules are as follows:

Circuit Court Rule 2.1.

(a) . . . written notice of the hearing of all motions shall be given to all parties who have ap-

---

* It is to be noted that this date was 5 days prior to entry of the default order on January 25, 1961.

peared and have not theretofore been found by the court to be in default for failure to plead . . .

(c) Notice shall be given in the manner and to the persons described in Supreme Court Rule 7.

Supreme Court Rule 7.

(1) If a party is represented by an attorney of record, service shall be made upon the attorney, otherwise service may be made upon the party.

(2) Papers shall be served as follows:

(a) By delivering the same to the attorney or party personally;

. . . . . .

(c) Or, by depositing them in a United States post office or post-office box, enclosed in an envelope, plainly addressed to the attorney at his business address, or to the party at his business address or residence, with postage fully prepaid.

Circuit Court Rule 1.4 (Withdrawal of Attorneys).

(b) Notice of withdrawal. An attorney may not withdraw his appearance for a party without leave of court nor unless he has given reasonable notice of the time and place of the presentation of the motion for leave to withdraw by personal service or by registered or certified mail, directed to the party represented by him at his last known business or residence address.

(c) Motion to withdraw. The motion for leave to withdraw shall be in writing and, unless another attorney is substituted, shall state the last known address of the party represented . . . .

▪ Notice that the supplemental complaint was going to be presented to the court was served upon defendant's attorneys of record by mailing a copy to

them at their office address as it appeared on the court papers which they had previously filed. The address to which this notice was mailed was the same as that appearing on the attorneys' subsequent motion for leave to withdraw their appearance. Service in this manner was therefore in accord with the first two rules above quoted, and constituted proper service upon defendant. This notice warned defendant that plaintiff would seek to file her supplemental complaint and would also seek an order on defendant to plead thereto "within a time to be fixed by the court"; that plaintiff would also seek temporary alimony, child support, attorneys' fees, and an injunction. All of these matters were, in fact, ruled upon by the court and included in its order of December 22, 1960 and, defendant having had proper notice thereof, he is bound by all the provisions of that order. In re Kettles, 365 Ill 168, 6 NE2d 146. The order of December 22 contained within its provisions a further indication that defendant had received timely notice, because in setting various matters for hearing on January 12, 1961 it also set for hearing defendant's motion to dissolve the injunction. Thus, defendant had notice that the litigation was actively being pursued by plaintiff, that he was required to plead to the supplemental complaint, and that a hearing would be held on January 12, which could have consequences of great importance to him. The order of December 22 having set the hearing date of January 12 "without further notice," defendant is thus also bound by the proceedings and order of January 12.

The next question is whether defendant was given proper notice of his attorneys' withdrawal of their appearance on his behalf. Defendant contends that certified mail notice to him c/o General Delivery, Las Vegas, Nevada, does not comply with the requirement of the rule that it be mailed to his "last known

business or residence address." * In its order permitting withdrawal, the court had found that due and timely notice had been sent by certified air mail "to the last known mailing address" of defendant. We consider this conclusion by the court to have been correct and that the mailing, as shown in the record by affidavit, constituted compliance with the rule.

In 72 CJS, Process, § 43, p 1054, it is stated that "Service is complete when all the required acts are done. So, if all that the statute requires is done, it is immaterial that defendant in fact receives no actual notice thereof; and the fact that he does not thereafter personally receive the papers which were so served or that he receives them at a later date ordinarily does not affect the validity of the service." See also Droste v. Droste, 231 Iowa 216, 1 NW2d 107, and Franklin v. Bonner, 201 Iowa 516, 207 NW 778.

We are aware of no Illinois decisions in which it has been determined that an address "c/o General Delivery" is insufficient to comply with the rule. It is argued that General Delivery is neither a residence nor a business address. The rule, however, contemplates service by mail, and states, in effect, that mail addressed to either home or office will be considered sufficient. Since General Delivery was defendant's last known mailing address, we find no difficulty in concluding that mail so addressed constituted a mailing to his business or residence address.

Two recent cases reflect an attitude bearing upon the question of notice as raised in this case. In Bernier v. Schaefer, 11 Ill2d 525, 144 NE2d 577, the Supreme Court said at page 529:

---

* These words appear in paragraph (b) of Circuit Court Rule 1.4 quoted more fully above in the opinion. It should be noted also that paragraph (c) of the same rule contains the requirement that the attorney seeking to withdraw "shall state the last known address of the party represented."

*First,* the defendant complains that he did not have notice of the plaintiff's intention to seek a default. However, it is not denied that the plaintiff *sent* such a notice. And apart from this, there is the fact that the defendant was personally served with a summons, personally served with a writ of injunction, and even dispossessed of the invention model before he undertook any action relative to checking the progress of the suit. *If the proper giving of notice can now be frustrated by the mere allegation of the defendant that he did not receive it, then the giving of notice by mail cannot be relied upon even though the rules specify such a method.* (Emphasis supplied.)

Concluding, the court said at page 530:

While this court is desirous that everyone be given his day in court, we must, so far as reasonable, protect the stability of judgments. The record discloses that the defendant was given ample opportunity to defend, but persisted in a course of conduct which reasonably led the plaintiff and the court to believe he did not wish to contest the suit. He does not have, under the circumstances, a right to have the cause reopened; and the trial court did not err in denying his petition.

Subsequently, this court, in Chavez v. Elgin, J. & E. Ry. Co., 32 Ill App2d 68, said at page 74, 176 NE2d 664:

Plaintiff has not sought to explain why he did not appear for a deposition, except to assert that he did not receive the notice. Under all the circumstances this allegation in his petition is unavailing under section 72. . . . As we view plaintiff's petition under section 72, it poses but one question—the legal effect of mailing the notice to dismiss;

37

that question, we think, is resolved against petitioner by the Bernier case.

The record is clear that the various notices in this case were sent to defendant at his last known mailing address in what we have determined was compliance with the rules in that regard. The trial court concluded that the positive sworn statements that the notices were thus sent to defendant, and the sending of which he does not deny, could not properly be overcome by his mere denial of their receipt. We believe this to have been a correct conclusion, and, consequently, the Section 72 petition as it related to this point was insufficient.

Defendant's petition also asserted that plaintiff had procured the default divorce decree by fraud in that plaintiff's attorney and defendant's Nevada attorney had been corresponding at the time in an attempt to reach a property settlement agreement; that plaintiff's attorney had assured defendant that nothing further would be done in the case; and that defendant was thus lulled into the belief that he need not protect his interests in the Cook County litigation. Defendant relies chiefly upon a letter from plaintiff's attorney dated January 13, 1961 to defendant's adult son, Paul W. French, Jr., with instructions to read it and forward it to defendant. The last two paragraphs of this letter read as follows:

> After you have digested this letter, together with any comments Paul Jr. cares to make with his accompanying letter, should prompt you to want to confer with me regarding a property settlement, please feel free to let me know through Paul Jr. and I may be able to get a power of attorney from your wife and work same out, as the way things stand now, it honestly looks like she

38

would get a very good deal all the way around because I don't see how you could state your side of the question to the Illinois Courts.

*I will do nothing further,* as I agreed with Paul Jr. *on your wife's case,* although it is ready to be disposed of immediately, and I trust you will not do anything with any case you may have started down there, *until we confer regarding property, if you and Paul Jr. feel that it is to your benefit to do so.* I have an opportunity to go to Vegas with Messrs. Cortino and Golden so *please let Paul Jr. know immediately if you do or do not want to confer with me.* (Emphasis supplied.)

This letter should be considered against the factual background of the Cook County litigation at the time. Defendant's attorneys had withdrawn and defendant had been ordered to answer the supplemental complaint by January 21, 1961 or be subject to default.

The statement in the letter of plaintiff's attorney that he would "do nothing further" was expressly conditioned upon defendant's conferring with him regarding a property settlement if defendant and his son were to decide that it was to his benefit to do so. The letter also specifically requested that a decision in this regard be made immediately. A full week went by, however, with no word from defendant before plaintiff's attorney mailed his notice to defendant that he would move for a default decree. Defendant never did answer the letter, but his Nevada attorney, to whom he referred it, wrote to plaintiff's attorney on January 21, 1961.* He commented that plaintiff's attorney had over-estimated defendant's net worth and expressed a hope that the parties might settle their differences

---

* This was the day after defendant's petition acknowledged that he had learned of the withdrawal of his Chicago attorneys.

amicably, but carefully avoided making any response to the possibility of defendant's conferring with plaintiff's attorney. It appears clear, therefore, that the condition on which plaintiff's attorney had written that he would withhold further action in the Cook County litigation was not met, and it would be unreasonable on these facts to say that plaintiff fraudulently induced defendant to refrain from retaining Chicago counsel or taking other steps to protect his interests at a time when he was in default.

Defendant cites three cases principally in support of his position: Davies v. Davies, 6 Ill App2d 8, 126 NE2d 160, Dann v. Gumbiner, 29 Ill App2d 374, 173 NE2d 525, and Ellman v. De Ruiter, 412 Ill 285, 106 NE2d 250, 350. All are factually distinguishable and, in our opinion, are not precedents of any value to defendant in the case at bar. We are aware of the broad scope of application recently accorded the principle of the Ellman decision, but believe, nevertheless, that defendant here does not come within its terms. As stated in Lamoreaux v. Havranek, 25 Ill App2d 51, at page 54, 165 NE2d 547:

> [T]he facts in each case must be considered, and the instant case has no factual similarity to the Ellman v. De Ruiter case, in this court's judgment. In that case, there was a course of conduct designed, by a parties [sic] counsel to lull the defendant until the trial court's power over the proceeding ceased to exist . . .
>
> Based on the record which we have, there is absent in the instant case any facts to indicate such a situation. In the absence of clearly stated facts to justify such an inference, this court will not and cannot supply such facts by inference or in any other manner. We find no occasion demanding the application of equitable principles in this case.

40

We conclude, therefore, that the trial court's order of September 7, 1961 striking defendant's petition should be affirmed.

█ On October 10, 1961, defendant obtained leave to file another petition under Section 72 of the Civil Practice Act. By a document filed in court plaintiff had opposed the granting of permission to file this petition on several grounds, calling the court's attention to the fact that the allegations made in the new petition were substantially the same as those previously stricken; that defendant, who was seeking by his petition to set aside plaintiff's decree of divorce, had subsequently married another woman; that defendant had no standing in equity as he had not paid anything on account of the alimony, child support or attorney's fees ordered by the divorce decree of February 1, 1961; that defendant had signed a certified mail receipt evidencing service upon him of the injunction restraining him from proceeding with divorce litigation in Nevada, but had, nevertheless, proceeded to obtain a divorce decree in Nevada on March 21, 1961.

Defendant's petition of October 10 raised essentially the same points as were presented in his earlier petition, although in greater detail,* and we believe that the court's order of the same date dismissing this petition for want of equity should also be affirmed.

Affirmed.

MURPHY and BURMAN, JJ, concur.

---

* On the question of fraudulent lulling of defendant through continuing negotiations there were attached to this petition as exhibits four later letters between defendant's Nevada attorney and plaintiff's attorney. They fail to support defendant's argument, however, because the earliest of these letters from the Nevada lawyer, dated May 12, 1961, indicates that he knew of the entry of the divorce decree and that plaintiff's attorney had commenced an action in Nevada to recover from defendant the fees which he had been awarded in the decree.